ALABAMA & VICKSBURG RAILWAY COMPANY *v.* HAYNE & CO.

1. RAILROADS. *Carriage of goods.   Unreasonable delay.   Quarantine. Notice to consignors.*

   An instruction that if a railway company knew when it received goods for shipment that it could not deliver them on account of quarantine restrictions upon its traffic it is liable for loss caused by delay, is erroneous, for want of the qualification that there must also have been a failure to notify the consignor of such inability.

2. SAME. *Instruction.*

   It is also error to charge the jury with reference to such knowledge on the part of the carrier in the absence of any evidence of the same.

FROM the circuit court of Hinds county.

HON. ROBERT POWELL, Judge.

Hayne & Co., appellees, were plaintiffs in the court below. The railway company, appellant, was defendant there.

Hayne & Co. bought cotton of one Ellis, at Steen's creek. The cotton was delivered to the railway company at Pearson, a station five or six miles east of Jackson, on the thirteenth, fourteenth and fifteenth of September, 1897, but none of it was delivered in Jackson till November 8, 1897. By reason of a decline in the price of cotton, Hayne & Co. allege that they lost more than two hundred dollars, for which they sue. The railway company defended on the ground that it was prevented by (1) a legal quarantine established because of yellow fever, or (2) an illegal quarantine because of a panic resulting from a threatened epidemic of yellow fever, and this illegal

quarantine backed by a force sufficient to prevent the delivery of the cotton in Jackson. There was no evidence to sustain the defense of a legal quarantine, but there was evidence that the transportation of the cotton to Jackson was prevented by the action of the mayor, chief of police and city physician of the municipality, who were in practical control of all matters relating to quarantine, with ample physical force to support their authority.

The second instruction given for the plaintiffs, Hayne & Co., is as follows: If the jury "should believe from the evidence that the defendant could not ship the cotton on account of yellow fever, or any consequence arising from reports of the same, yet if they further believe from the evidence that defendant knew it could not be shipped at the time the cotton was received and the bill of lading issued, and if they believe that plaintiff has been injured, and that such injury would not have been received had the cotton been rejected, the jury should find for the plaintiff."

*Mc Willie & Thompson*, for the appellant.

1. In respect to delay in the transportation of goods, as distinguished from their loss or destruction in transit, railway companies are not insurers, and any superior physical force that prevents an earlier delivery to the consignee is a sufficient excuse to justify the delay. *Gulf, etc., R. R. Co.* v. *Levi*, 8 L. R. A., 323; *Pittsburg, etc., R. R. Co.* v. *Hallowell*, 32 Am. Rep. 63; *So. Pa. R. R. Co.* v. *Johnson*, 45 Am. & Eng. R. R. Cas., 338; Elliott on Railroads, secs. 1459, 1482; 2 Rapalje & Mack's R. R. Dig., 63, 64, 68, 70; *Vicksburg, etc., R. R. Co.* v. *Ragsdale*, 46 Miss., 477. Even where the delay is occasioned by lack of transportation facilities carriers are relieved when the insufficiency results from an unusual press of business too great for facilities that are ordinarily adequate. Elliott on Railroads, secs. 1482, 1483. In the case at bar a part of the delay certainly resulted from the necessity of

having to order a freight car to be sent out from Jackson, and it is not unlikely that there would have been no delay had there been sufficient cars at Pearson, which is a very small village.

2. The second instruction for defendant is erroneous in that there is no evidence of knowledge on the part of the defendant when it received the cotton that it could not carry the same into Jackson. It is also objectionable in that it imposes on the defendant the duty of rejecting the shipment, without reference to the knowledge of the shipper of the obstruction to traffic, whether derived from notice through defendant's agent or other sources.

*Williamson & Potter*, for the appellees.

If the railway company knew on the thirteenth, fourteenth and fifteenth of September that, by reason of legal quarantine or by superior force, it would be prevented from delivering the cotton to Jackson, it should have refused to receive it, or, having received the cotton, Hayne & Co. should have been notified that there would be delay in the delivery. If the railroad carrier accepts goods with knowledge that delays will occur, and without informing the owner or consignor of that fact, it will be responsible for the loss by delay. 4 Elliott on Railroads, sec. 1487; 7 Fed. Rep., 68; 63 Fed. Rep., 200; *Louisville, etc., R. R. Co.* v. *Odill* (Tenn.), S. W. Rep., 611.

"Where goods are delayed after acceptance for transportation, the owner should be notified of the delay with reasonable diligence." 4 Elliott on Railroads, sec. 1487, and numerous authorities cited in note 2.

According to the record, the defendant company knew this cotton would be delayed when it received it and no notice was given to either the consignor or the owner before or after acceptance for transportation.

While it is the duty of a common carrier to receive and transport goods when properly offered, yet if, at the time the goods are offered for shipment, the carrier knows that it is

prevented by law [quarantine or otherwise] from carrying them, or, during a period of danger of yellow fever or mob violence, it will be prevented from delivering the goods within a reasonable time, it may refuse to carry or accept for transportation the proffered freight. Elliott on Railroads, secs. 1455, 1456; 94 Ill., 548; 54 Ill., 58; 64 ·Ill., 128; 58 Ill., 487; 77 Ill., 457; 4 Wall. (U. S.), 605. ·

Argued orally by *T. A. McWillie,* for appellant, and by *C. M. Williamson,* for appellee.

WHITFIELD, J., delivered the opinion of the court.

It was error to give the second instruction for the appellee, for the reason that there was no evidence making it applicable to the case made by the testimony. Counsel for appellee say that the agent Buckley's testimony made it proper. Buckley [station agent at Pearson] did say he "had a message from W. W. Bond [superintendent of railway company] telling us not to receive"—but before he finished the sentence he was stopped by objection to the testimony, and the objection was sustained and this fragmentary statement excluded. It was not, therefore, before the jury. The telegram from Todd [city physician], sent at 6 o'clock on the evening of the thirteenth of September to Bond, when taken in connection with Bond's answer and what was done by him next day, shows that telegram to have related to passengers. It was sent by Todd because Bond would not agree not to stop the eastbound passenger trains from Vicksburg at Edwards, where the yellow fever was raging. All the testimony shows this. The information Chapman [station agent at Jackson] gave Buckley was not derived from Bond, and was not given till the sixteenth, after the cotton had been received for transportation. Bond should certainly have been allowed a reasonable time, in view of the violent panic and the great excitement and confusion, within which to have ascertained whether it was the purpose also to

stop freight trains from Pearson to Jackson, west bound, and to then notify agents accordingly. Under all the circumstances, this charge ignored that right. The abstract doctrine that, if the carrier received the goods for shipment when it knew it could not ship them, and that it gave no notice to consignor or consignee, and damage resulted solely therefrom, the carrier is liable, is correct enough. But this instruction only announces a part of the rule. It does not count on any failure to notify consignor or consignee, but counts alone upon the failure of the company to reject the cotton if it knew it would not be shipped, and that too in the absence of satisfactory proof that the company did so know at the time it received the cotton.

The next question is whether the giving of the instruction is reversible error. And we think it must be so held, in view of the closeness of the case on the evidence, as to liability under all the circumstances. If this instruction had not been given, and the verdict had been the same, we would not disturb it, since there is evidence which would have warranted the jury in finding the cotton might have been shipped in on the morning of the sixteenth or seventeenth at least. Wharton's testimony and Ewing's show this. But, with the case so doubtfully balanced on the main issue, we cannot confidently say that this instruction did not produce the result arrived at by the verdict.

*Reversed and remanded.*